Our next case is Daye v. U.S. Attorney General. We'll give everyone a moment to get settled. Mr. Osorio, we're ready when you are. Thank you, Your Honor. May it please the Court. My name is Ben Osorio, and I, along with Mr. Goodman, represent the petitioner in this case, Mr. Everton Daye. I'd like to start with where I think the parties are somewhat in agreement, and we may be able to tailor this case for a narrow remand. Both the government and Mr. Daye agree that the Board incorrectly applied this Court's realistic probability test, and that the statute itself can satisfy that. So given that the Board never considered whether some of the substances that Mr. Daye referred to would possibly qualify as conduct that's file-based or depraved, this Court can narrowly remand there. Aside from that, we start to get… Explain to me more why we would remand in that case. So this Court, in both Zarate and Latour, recently remanded when the Board committed a legal error. So this Court could say, Board, you've not conducted the realistic probability test in the way that we conduct this in the Eleventh Circuit. And so now, given that, you need to look at the facts that Mr. Daye presented, and would all of these substances, would transportation into Virginia qualify as morally turpitudinous conduct? In other words, the Board would have to look at the list as it existed at the time of conviction. Pick the one that's the least harmful. I think you mentioned one in your brief that's escaping me at the moment, but it's a substance I've never heard of before. And you say it doesn't exist, at least at some point on the Federal schedule, and see whether that is a moral turpitudinous crime, correct? That's correct, Your Honor. And then, I just wanted to clarify, I'll ask your opposing counsel when he comes up, but you're saying that the government has agreed with you that it would stipulate that we should do that, or that that is what its preferred resolution is? Is that what I understand the concession to be? No, Your Honor. The government just concedes that the Board did it wrong. Right. But doesn't it say that under Tellez, I'm going to mispronounce the name so I won't bother doing it, but under our recent decision at Telemachy, that we, as a legal conclusion, can reach this issue, correct? That's the government's position, Your Honor. But I think it becomes a little bit thornier from there, and there's obviously other additional reasons for remand in light of the Virginia legislature's decriminalizing, legalizing, and now allowing the license sale of recreational marijuana. So let me ask you, you spend a lot of time arguing about overbreath, and overbreath is really important when we apply the categorical approach for violent felonies, and especially for drug offenses. But as I understand the moral turpitude cases, overbreath really isn't the issue. The issue is simply, is this crime in its least criminal conduct form a crime that is moral turpitude or not? And the first is whether there's the relevant intent, and the second is whether it's vile, depraved, and so on and so forth. Do I have that right? That's correct, Your Honor. So what does it matter if something is listed or delisted by Virginia later on or the federal government before or afterwards? Don't we just ask whether the least criminal on the list is, A, there was an intent element with regard to that, and there's an argument about whether you have preserved that or not. And secondly, whether something you have preserved clearly is whether that meets the test of depraved, vile, so on and so forth, right? Yes, that's correct, Your Honor. And I would say on page 13 of my opening brief, I said that this offense lacks evil intent. I understand that later in my reply brief I referred to a specific intent, but I believe that's enough, and I was very consistent in arguing this is a regulatory offense throughout. And I believe by making a regulatory offense, I consistently argued that it lacks the mental culpability that's required to qualify. Let's not worry about that at the moment. I'm more concerned about or I'm more interested in what—back to my question to you. Why does it matter, unlike it would for when we're comparing the word controlled substance events in applying the INA, but in a moral turpitude case, why it matters whether something has been delisted by Virginia or by the federal government later on? I guess I would point to my citations of the Attorney General and the way that they list and delist controlled substances. So if the Attorney General has made a decision to take it off or some of that authority has been regulated, delegated to the DEA, and so if they're making that decision, aren't they saying, okay, we no longer view this as right for abuse or, you know, all the societal ills that the board is concerned about in a matter of court? But I still think there is a larger problem now, given the Virginia legislature has allowed the recreational use of marijuana, the licensed sales. So given that the government's whole point is we should defer to the Virginia legislature. Can I ask you, is marijuana the least culpable now? Is that—you tell me. So you have the list. There's 22 on there, as I understand it. You tell me. I want to know which one's the least, because I don't want to pick it and then you tell me, well, no, no, no, it's really this one here. I mean, I think in light of the Virginia legislature's and many other state legislatures' decision to allow recreational sales of marijuana, decriminalize it, allow the licensed sale, I have a hard time thinking how could this be anything else other than a regulatory offense. So in light of that, I would argue— Has the government decriminalized trafficking of marijuana? No, Your Honor, and I would say that the violation of all of those regulations and trafficking statutes that are still in place are still crimes, but that goes to the crux of whether this is morally repugnant. So just like I've cited a number of cases where deregulated sales of liquor or tobacco or trafficking in contraband cigarettes is still a crime, trafficking in marijuana would still be a crime that the state could be punished, but it's just a license issue. Is cocaine morally repugnant? Yes, but the recreational use of cocaine has not been legalized by 17 states. But your client's offense here is transporting, it's a trafficking offense, right? And it says with intent to sell or distribute. It would be— I'm looking at the Virginia Code 18-2-248.01. That's his crime, right? That's correct, Your Honor. And at the time he was convicted, it was trafficking with intent to sell or distribute one or more ounce and then of controlled substances, didn't it? That's correct, Your Honor. So that was the offense. And intent's right there with intent to sell or distribute. That's correct, Your Honor. So on the face of it, it's got intent. Right, but now Virginia has actually struck— I'm not interested in now. I'm interested at the time he was convicted what the crime was. I'm just trying to clarify that. Yes, Your Honor. Okay, and so tell me why trafficking in illegal substance—I don't particularly care what the substance is. It was criminalized. Well, that's not a crime of moral interpretive. Trafficking in illegal controlled substances, just at a broad generality, categorical, whatever it is, as long as it's illegal. I guess if that substance wasn't prone to abuse or could have no sort of ill effects on society or the community at large, if Virginia criminalized something sort of out of haste— we all know that chemists can modify drugs in different manners and fashions, and so a lot of times these state legislatures and the federal government included, they'll criminalize something, you know, out of a need to protect, and then later when they find out there's actually no way that you can be abused or modified or, you know, it's not a risk to the public at large, then they take it back off. So if we made something illegal— I wouldn't say that that was accidental, that that was characterized as a controlled substance by one government body or another. No, I would agree wholeheartedly with you, Your Honor, on the front end, but then we have to consider why did the DEA take it off in 2010. So, again, there's a whole process for how these— This goes back to my point, sorry, to go back to it, but I asked you about cocaine. You said, yes, it's moral turpitudinous. There was a time that cocaine was in soft drinks and was readily available. Is that not moral turpitudinous then? Again, Your Honor, this is the problem. I agree wholeheartedly with CIMT's is that it's an evolving standard. It's not a problem. It either is or is not. In other words, the fact that it's listed or not does not make the difference. It either is moral turpitudinous or not moral turpitudinous. I understand your point is that our mores, our morals shift over time, but with regard to controlled substances, they either are problematic or vile, the trafficking of them is problematic or vile, or they're not. Whether they're listed or not seems to be completely besides the point. I mean, this chemical substance that Judge Grant mentioned, five years from now we may see that, hey, it's being turned into fentanyl, and the government may put it back on. That doesn't make it any less moral turpitudinous or not, right? Yes, Your Honor. To some extent I agree with that, but then we still are stuck with the marijuana issue. How are we dealing with the national standards that have clearly evolved on this to treat it more like alcohol and tobacco? Drug trafficking is still illegal for marijuana, and it's not illegal to sell a lot of beer, right? Isn't that a difference? Well, actually, I think that hits on my key point in that how this court would distinguish marijuana from the other substances that are listed and controlled is now marijuana, like beer, like tobacco, is recreationally allowed in Virginia. Are you allowed to traffic marijuana in Virginia? No, Your Honor, but you're not allowed to traffic cigarettes or traffic alcohol either without a license. So that's my point, that it becomes a licensing issue at that point. Can you traffic? Was he trafficking marijuana with a license? Isn't that an entirely different thing? He was not, Your Honor. It did not exist at that time in Virginia. So what you're saying is that he committed a crime of trafficking in a controlled substance at a time when that trafficking was illegal, right? That's correct, Your Honor. Thank you. Thank you. Mr. Ramnitz? May it please the Court, Your Honors. Tim Ramnitz on behalf of the United States Attorney General. The petitioner challenges the Board's termination of his conviction under Virginia law for trafficking with intent to distribute five or more pounds of marijuana, one or more ounces of cocaine, or a Schedule I or II controlled substance does not categorically constitute a crime of volumoral turpitude. The Court owes deference to the agency's termination. Counsel, at least as this case has been litigated, and this is part of the problem, that immigration judge found indivisibility, found it was not divisible. That, as best as I can tell, was not appealed and not decided by the BIA. In other words, it took as a given that it was indivisible, and that is taken as a given to us at least in briefing. I know in the letter brief now there's some retrenching on that. But it seems to me that we need to take as a given or at least assume that it's indivisible for right now, which means that the whole list comes in and not just cocaine and marijuana, right? That's correct. Although I'm not sure it matters because he's saying, your opposing counsel is now saying, unlike he did in his brief, that marijuana is the least criminal of the list as opposed to the chemical that is specifically referenced in the brief, right? Right. So two points. DHS did continue to challenge divisibility up to the Board. The Board just declined to reach it. And you haven't appealed that to us? No, because when the Board doesn't reach an issue like that, we generally will not step in front of the Board. But when the courts seem to be requesting that in a letter brief order, we are more than happy to argue divisibility. The second point is I think what Judge Hull mentioned in Petitioner's argument. So we're not looking at any particular drug here. It doesn't matter what the substance is. What if Virginia tomorrow puts sugar? Because sugar is causing an obesity problem in the state of Virginia, and it wishes not to have any transportation of sugar brought into the state. Petitioner's brief. It's hypothetical. Well, I think when we're getting to, this also goes with the argument of alcohol, maybe that's a benign substance. Let's use sugar. Sugar, sure. It's much different trafficking in a substance that's illegal than it is merely possessing for recreational use of substance. Well, sugar is illegal in Virginia. They have said you can't possess it, you can't have it, it can't be in food, don't bring it here from out of state. And the dangers inherent in trafficking are still always there. So alcohol was at one point prohibited famously, and lots of violence accompanied the trafficking that occurred then. It doesn't matter what we may have viewed alcohol as later on. Trafficking itself inherently involves violence. Someone driving through Virginia with sugar. It's outlawed in Virginia, but they want to make it to the D.C. border where it's legal. They're still more likely to engage in vehicular flight from police because they know they're going to be arrested for a felony. They're more likely to engage with police officers. Trafficking itself is the problem, and that's why illicitly trafficking is what involves reprehensible conduct in this case. It doesn't matter what the substance is. But here we're getting ahead of ourselves because it's not sugar. We're talking about substances that the Virginia legislature has stated are harmful, they're addictive, and there's no medical purpose for this. Your opposing counsel is right to an extent. At some point, I mean, this is a moral judgment that's being made, and at some point society just sees some things as differently than others. In other words, if the crime was possession of five pounds or more of cocaine, not necessarily for trafficking, I think we would say that that was moral turpitude or at least a drug crime of some sort. But if it's now possession of a lot of beer, that would not be something that we would condemn in any way. You would agree with that? Possession. Just straight possession. And trafficking, again, that's a different animal altogether because you are engaging in illicit distribution of a subject to others, so you're not really possessing it for your own use. And we would say getting yourself drunk, for example, that's not reprehensible nowadays by our standards. But you are distributing this to others, which is what the board has long said, and courts have also said that is what you're doing that's reprehensible because it's not for yourself. You're putting this on other people, and you're engaging in societal harm that way. Why shouldn't we send this back for the board to make this call? To make which call? Well, the call of whether marijuana is moral turpitudinous or the trafficking of it is moral turpitudinous. I believe the board did make this call. The immigration judge's decision is very thorough. Not really. What it said was in Virginia, and again, the argument was a little different than it is here. We weren't talking about marijuana then, but what the court there said is under our test and how we think the Eleventh Circuit would apply it, the reasonable probability test would require this prosecution to be for something on that list, in other words, something other than cocaine and marijuana, or that they have to point to an actual prosecution in Virginia. And they weren't able to do that with the chemical that they mentioned, and that's why they lost. That's why the board ruled the way it did. We know that that's wrong. You've admitted that's wrong commendably to us. Why shouldn't we get the board to do that? And the reason I ask is because Judge Joflat wrote a concurring opinion in one of the things, Orate or Latoura, I think Latoura maybe, in one of the cases that we sent to you. And his point was a good one, which is, you know, the board is making these sort of Chevron deference administrative determinations on each individual statute, and shouldn't we let it do that and make that call and then apply Chevron deference to it rather than us making a legal determination up front? And that seems wise to me in some ways. What do you say to that? I think that is generally the best course for the courts to take is to remand in those instances for the agency to address something like this, whether or not there's reprehensible conduct in the first instance. However, the board states it's affirming the immigration judge's decision, and as this court has stated under Jahar, standard review case, when the board's affirming the immigration judge, it looks to the immigration judge's decision as modified by the board. And the immigration judge's decision takes the petitioner's argument at full force. It says, look, we recognize that there's these non-federally controlled substances, but that's not the point. You are distributing substances which have been deemed harmful to society, and under our precedence, matter of core and matter of Garcia-Como, that's long been held to involve reprehensible conduct. The board looks at that and says we're affirming that determination, but moreover, you haven't even pointed to cases where they've actually prosecuted this conduct. So that's what the government described in the brief, is this is really extraneous reasoning. They erroneously applied the realistic probability approach, but it wasn't necessary to determination in that case. The immigration judge already did the heavy lifting, and the board affirmed that finding. Well, the board's allowed to do that. I mean, the board's allowed to ignore its administrative judges as much as they want, but it's hard for me to say that that's extraneous reasoning or unnecessary. It seems to be that it applies the test. It says respond in a search that one can be convicted of the statute even if passing through Virginia with the intent to give away a controlled substance in another state where that substance is legal. The respondent also claims that one can be convicted under the statute for giving away a controlled substance listed in Schedule I's but that are not listed. However, the respondent does not claim that his conviction involved either of these scenarios, and he has not identified any case in Virginia applied, and then ultimately reaches the conclusion that does. So it seems to me that was essential to the board's holding, the misapplication of the reasonable probability standard. I don't see any place in the board's opinion where they disagree with the immigration judge. They affirm the immigration judge. They don't separate the reasoning out saying we're not agreeing with the immigration judge for this particular reason. They affirm the immigration judge's decision, which was very thorough, saying any controlled substance under Virginia law, recognizing that there's non-federally controlled substances, that is not the point. The point is that you distributed these unlawful substances. That is a crime involving moral turpitude. The board doesn't take any issue with that. It affirms the immigration judge's decision and then adds, moreover, you haven't even pointed to cases where this happened. Except for the divisibility point, which you now take issue with. That's a divisibility. Right. So when we're talking about crime involving moral turpitude, it affirmed the immigration judge and then added, moreover, you haven't even shown this happens in the case law. I don't think that's necessary to the board's disposition of the case. Otherwise, we could talk about divisibility if the panel would like to. I think it's something the court could reach if it doesn't agree with the board's crime involving moral turpitude issue. And I believe the divisibility in this case follows the Fourth Circuit precedents in Baugh and Kukulon. It's a Virginia statute. It's a drug statute. They were different statutes. You agreed they were different statutes. They were different statutes. And the Fourth Circuit has looked at many of these, though, at this point. And they said they all involved the prosecution to prove the identity of the drug involved. And we noted in our letter. But the Virginia courts have not, in the Fourth Circuit, have not said that all Virginia-controlled substance statutes require as an element the naming of the drug and the amount, right? That's correct. That's correct. What we look at in our math is what's suggested by the case law. And then we add that to jury instructions. We can add that to the record of conviction in determining whether or not this is a separate crime. And the government argued, at the very least, this is a disjunctively divisible crime for the three substances mentioned on the face of the statute, marijuana, cocaine, and then Schedule I or II substances. Except that in taking that sneak peek, which allows us to do under the Shepard documents, cocaine is not mentioned in the charging papers and in the judgment, right, for the cocaine charges? I don't believe there are cocaine charges in this case. So I think that actually supports this idea because cocaine is not mentioned. What were the three convictions for? Three convictions were one was for transportation distribution of five or more pounds of marijuana, and the other two say Schedule I or II controlled substance. Right. I thought we all agreed that it was cocaine but just not mentioned or charged as cocaine, right? I have not seen cocaine in the record of conviction. Okay. But what I'm arguing is that disjunctively amongst the three mentioned in the text, cocaine, marijuana, and Schedule I or II substance, the record of conviction actually supports that because they do marijuana and Schedule I or II controlled substance. Cocaine does not seem to be involved in this case, so there's no cocaine. So at least by the text, it seems divisible in those three ways. When you look at jury instructions, it also says name of drug and quantity must be inserted by the prosecution. And quantity only comes into question under this statute when it's cocaine and marijuana. It has to be one or more ounces of cocaine, five more pounds of marijuana. So jury instructions will also seem to be in accord with this, that you'd have to put in at least marijuana or cocaine if those drugs were involved. And then case law seems to also suggest that the prosecution has to prove this as well. And so Pridisner only focuses on sentencing factors. That's one way to do it, but there's this other way that Mathis lays out. Mathis doesn't even talk about the apprentice sentencing factors. He talks about case law, jury instructions, and the peak of the record, which I think supports at least facial divisibility in this case. And then you see clearly one of his convictions involved five or more pounds of marijuana, and he has a federally controlled substance as part of his conviction record. And as he's conceded time and again, trafficking in a federally controlled substance involves moral turpitude. He's just stating that if it's not federally controlled, then it doesn't involve moral turpitude, which his government's brief went into quite detail, arguing that's just a false equivalency. He states the federal government's not declaring these drugs are harmless, just perhaps has not got around to it. State legislators are always circumventing or always battling circumventions around drug laws, and Virginia has done so in this case. Unless the panel has any further questions, the government will rest. Thank you. Mr. Arsorio, you've got five more minutes. Thank you. Go ahead. So I think that the government's point here that because Virginia made it illegal it must be bad goes to my argument about why this is a malum prohibitum offense. That's not their argument, at least here. Their argument is that the trafficking of a substance that's listed is harmful and could cause all sorts of evils because of the nature of making something illegal. In the case of alcohol, if alcohol were made illegal tomorrow, there would be a black market for it and all sorts of things would happen that we know happened when the last time it happened, and that happens when we've made drugs illegal.  That's what the government is arguing is the harm that is being targeted, not the substance itself. But then I still think we have to then concern ourselves with the evolution of marijuana itself. Well, let me ask you this. One of the last things your opposing counsel said was that you have conceded, and I think he's correct in this, that if something is federally listed, you agree that it is a moral turpitude crime. You made that argument with regard to that chemical you mentioned in your brief because that had been delisted, but marijuana, we all agree, is still listed federally. So two things. I would say that I'm not conceding that it is necessarily still a crime involving moral turpitude. I conceded that Matter of Corn is the law of the land with regards to the agency and has been for a couple of decades now that trafficking in controlled substances, federally controlled substances, was deemed a CIMT. There's a couple of issues with that given, one, also the national views and standards on marijuana, but, two, this court recently in Fouad Saeed addressed whether Florida marijuana was overbroad compared to the federal definition. But that's an aggravated—this is where I started with you. Overbreath deals with aggravated felonies and whether something is a controlled substance offense different than the CIMT thing. The CIMT issue is just different. It's different elements. It asks different questions. Right. But then the court would have to ask itself, is importing into Virginia unfertilized seeds that can never be used to achieve a euphoric high or can never be grown, that as Virginia prosecutes, and we've cited to a case in our letter brief, that Virginia still prosecutes and includes in the amount of marijuana unfertilized seeds. So is there an inherent morally repugnant element of that, of that conduct? Why does the court ask itself that? Why don't we look to state law to see what's been classified as a controlled substance? I mean, the court obviously would consider what the definition of marijuana in Virginia is and then say, okay, would transportation or importation of these things into Virginia be morally repugnant? Again, I think that this court should remand for the board to make that decision in the first instance, both in light that it didn't consider several of those substances that we listed but also in light of the Virginia legislature's legalizing of marijuana and allowing the license sales. I think the board should have a first opportunity to examine, does Virginia now, if we're adopting community standards, view this as morally repugnant? Well, I think we can judge by the fact that trafficking is still a crime. But what would you say is the qualitative difference between the moral turpitude of trafficking in a federally controlled substance versus the moral turpitude of trafficking in a state-controlled substance? Where do you see the delta there? I would draw the line at trafficking in narcotic substances, which, you know, again, there's not allowed the recreational use. Is the rule that trafficking in narcotic substances is morally turpitudinous or is the rule that you've cited that trafficking in federally controlled substances is morally turpitudinous? I would agree that the standard has been trafficking in federally controlled substances. But where I would draw the line, Your Honor, is trafficking in substances that are not permitted for recreational use. I would draw the line there. Because I would think that the Virginia legislature's findings that marijuana does not have an ill effect towards society and allowing the license sales shows that they have investigated this process enough and by allowing the license sale of alcohol, by allowing the license sale of tobacco— No, but it allows it with the license, just like they haven't decriminalized trafficking in alcohol without a license, just like they haven't decriminalized trafficking in cigarettes without a license. Is alcohol a controlled substance? It's regulated and taxed. Does it qualify as a controlled substance under Virginia law? I am not exactly familiar with the Virginia statutes on that, but I know that it's controlled by the ABC and is regulated by sales and tax just the same way that marijuana now is in Virginia, Your Honor. And I see that my time has concluded. Thank you. And thank you. I understand. I think that you are a pro bono counsel in this case. Yes, Your Honor. We appreciate your service as well. Thank you. Thank you. Thank you. Have a good day. That was our final case. We're in recess for the day until 9 a.m. tomorrow. Thank you. All rise. Thank you.